# PEOPLE ex rel. PATCH vs. BOARD OF SUPERVISORS.

*Fourth District Court for San Francisco Co., Dec. T.,* 1857.

### REVENUE — TAX COLLECTOR.

No rates of compensation to the tax collectors as fees are fixed by the statute of 1857 differing from, or changing those existing prior to its passage.

The tax collector and not the treasurer in the proper person authorised to collect and receive the taxes in the counties of this State from the persons assessed.

The consolidation act of the city and county requires all taxes to be paid directly to the treasurer; the treasurer is however, not authorized to collect them from the party assessed, but simply receives the taxes, as the depositary under the act.

The general revenue law of 1857, passed subsequently to the consolidation law, must have full force and effect given to its direct provisions when it conflicts with the act above referred to.

The tax collector is authorized to collect *all taxes* and directed to pay them over to the treasurer, and will be allowed his commissions as fixed by the act of 1855, on all taxes collected and paid over to the treasurer by him for city and county purposes.

This was an application for a *mandamus* to compel the board of

9

supervisors to audit the demand of *relator* for fees on delinquent taxes collected by him. The *relator* in his affidavit alleges that, as such tax collector, he had, on the fourth day of January, 1858, collected of city and county taxes, duly assessed and levied within and for said county, and for city and county purposes, the sum of $452,445, whereof $299,181 was collected by him in his said capacity on or before the third Monday of October, 1857, by virtue of the duplicate assessment list for 1857–8, delivered and charged to the said tax collector by the auditor, on or before the third Monday in September, 1857, all of which said several sums of money he has at various times paid over to the treasurer according to law. And that said tax collector, the *relator* herein, is entitled to have and receive commissions on the said sum of $299,181, for his official services in the premises, as provided by law. It is alleged the board of supervisors has refused and neglected to audit said demand, on the ground that said board has no authority to adjudge or consider the same ; and that said *Patch* had no right or authority as tax collector, to collect taxes prior to the third Monday in October, 1857 ; and that the duty of collecting said taxes prior to said date, was devolved by law upon the treasurer of said city and county, and that in collecting taxes prior to said date, the *relator* exceeded his powers.

The supervisors contended that the county treasurer was the only party authorised to receive taxes up to the completion of the delinquent list on the third Monday of October, and that *relator* is not entitled to fees on money collected before that date.

*Shafters, Park & Heydenfeldt,* for plaintiff.

*Janes, Lake & Boyd,* for defendants.

*Shafters, Park & Heydenfeldt,* for the *relator.*

The question is whether the seventy-seventh section of the " consolidation act" has been repealed by the " revenue act" of 1857. (*Statutes of* 1856, 167, and *Wood's Cal. Dig.,* 612 *et seq.*) It has been so repealed and by necessary implication. Section 77 of the " con

solidation act" relates to revenue as a subject matter and that section and the act of 1857 are therefore in *pari materia,* and consequently are to be considered in connection.

There are very many leading provisions in the act of 1857 which indisputably relate to this city and county as fully as to the other counties in the State : the provisions as to the board of supervisors and their powers in § 1,— as to the assessor in §3,— as to the board of supervisors and assessor in § 8,— as to the auditor's duty to *charge* the collector in § 34,— and as to the collector's duty in §§ 12 and 13, are all of this character.

Now, assuming that the provisions in § 8, which requires the auditor on the third Monday in September to deliver the assessment roll to the tax collector, is general, (and no terms of exception or restriction are used,) and further assuming that the provisions in §12 requiring the tax collector " upon receiving the list to proceed to collect the taxes," is also general, (and here again no exception is stated,) it is apparent that § 77 of the " consolidation act " devolving the duty upon the treasurer during the interval between the third Monday in September and the third Monday in October, is in conflict with the act of 1857, and is therefore repealed by it, by implication, and also expressly by the last clause of § 55.

But it was insisted that the authority of the treasurer under § 77 of the " consolidation act " is preserved by the proviso to § 44 and by § 56. There are three things entirely distinct in their nature : first, the power to levy taxes ; second, the mode of levying them ; and third, the mode of collecting them when levied, and these matters should not be confounded, but should be kept distinct in construing the proviso in question. Now by the very terms of the proviso, the " abridgment " spoken of, is treated in connection with the power of taxation only,— the word " thereto " clearly relating to the word " power "— as its antecedent. The last clause of the proviso, it is admitted, relates to the mode of levying and collecting, but the modes of levying and collecting in incorporated cities and towns, are alone saved and not the modes for levying or collecting in counties or in the city and county of San Francisco. The fact that " city and county

of San Francisco " are used in that clause of the proviso which affects the power to tax, and that the " city and county of San Francisco " is dropped in that part of the proviso which relates to the modes of levying and collecting, is quite satisfactory to show that the levying and collecting in this city and county was left to the operation of the general rule established by the previous sections of the act that have already been considered.

As to § 36, the first clause of the section ending with the word " existing," evidently refers to the power to levy taxes. The following clause bears solely on the rates of compensation for official service in the city and county of San Francisco, and provides in effect that they shall not be considered changed, and we do not now invoke the court for the purpose of having allowed to us any other or different compensation than that allowed by the act of 1855 to tax collectors. Nor are we asking that any " payment may be made out of the treasury not authorised by law " when the act of 1857 was passed. At that time tax collectors were entitled to commissions on all taxes lawfully collected by them, and treating that rule as still subsisting, *relator* is entitled to commissions on all taxes lawfully collected by him. He collects more under the law of 1857 than he could have done under § 77 of the " consolidation act," but the occasion and ground of compensation are all contemplated and provided for by the act of 1855. *Statutes* of 1855, 120.

Again, if the treasurer had made the collections prior to the third Monday in October, *relator* could have claimed commissions; for the list being *charged* to him by § 34, he must be regarded as the principal and responsible party, acting through the intervention of the treasurer.

*Janes, Lake & Boyd*, for defendants.

The *relator* insists that he is entitled to receive fees for all taxes collected according to the commissions allowed by the act of 1855. *Statutes* of 1855, 120. The respondent claims that he is not authorised by law to collect any taxes till default is made by the tax payers, or until they are delinquent.

By § 77 of the " consolidation act " (*Statutes* of 1856, 167) all

taxes shall " be payable and be paid directly to the treasurer," " and in default of such payment before the time when the tax collector may be authorised by law to seize and sell,". " the said tax collector shall proceed to collect said taxes together with his legal fees by seizure and sale of the property liable in the mode prescribed by law for the collection of such state and county taxes. The taxes due however may be paid to the said treasurer at any time before the property is sold, and on production to the tax collector of the proper receipt and payment of his legal fees .for services rendered up to that time, such property shall be discharged."

It is not deemed by the *relator's* counsel that under the. above provisions of the " consolidation act" the treasurer is the proper person to collect taxes prior to tax paying being in default, but he insists that the "revenue act" of 1857, ( *Wood's Cal. Dig.*, 612) works a repeal of those provisions, and that by its provisions San Francisco is embraced within the general revenue system of the State as to the mode of levying and collecting of taxes, from which she was specially excepted by the " consolidation act" of 1856. To maintain this proposition, there should be the clearest evidence of such being the intention of the legislature. So far from such intention appearing from its action, it was manifestly the contrary. At the time the " consolidation act" was passed, the "revenue act" of 1854 was in force and provided substantially the same mode for the assessment and collection of taxes as that contained in the act of 1857. See *Statutes* of 1854, 127, §§ 83, 84, 85, 87 and 88.

The object of the " revenue act" of 1857 was mainly to change the rate of taxation,—its purpose was not to interfere with any special laws then existing relating to incorporated towns. The " consolidation act" is the city's charter or constitution. It was matured with great labor and care. One of its main features is its provisions for an economical mode of government. To hold that the legislature has by implication repealed any of its provisions, would be to open the door for frittering away the entire charter by implicatien without the people being at all aware of the danger or destruction of the local government.

But aside from the general argument against the repeal, §§ 44 and 56 of the "revenue act" of 1857 expressly except San Francisco

from the operation of the law whenever it is in conflict with the chartered rights. See art. 4, § 25 of the constitution.

HAGER, J.—By the "revenue act" of 1857, it is made the duty of the assessor to complete the assessment roll, and deliver it to the clerk of the board of supervisors, on or before the first Monday in August, 1857. After this board disposes of the matters presented to them as a board of equalization, their clerk, on or before the third Monday in September, is required to deliver the corrected roll to the county auditor, who is required to deliver a certified copy to the tax collector, § 8. The tax collector, upon receiving a copy of the corrected roll, is directed to proceed forthwith to collect the taxes, § 12. When the tax is paid to the collector, he shall mark the work "paid" opposite to the name or property of the person liable for the tax, and give a receipt therefor, § 31. The auditor, upon receiving the roll, is required to charge the tax collector with the full amount of the taxes levied, § 34. The tax collector, on the first Monday in each month, must pay to the county treasurer all moneys collected for the state or county, and on the same day, present the treasurer's receipt for the same to the auditor, § 36. When the receipt of the treasurer is presented, the auditor must credit the tax collector with the amount thereof, and on the first Monday in February in each year, he must credit him with the amount of taxes delinquent, § 35. The county treasurers are required to settle with the state comptroller and pay over to the state treasurer the taxes collected for the use and benefit of the state, § 38.

By the amended act of 1855, p. 120, the tax collector of this county is allowed a certain per centage on all moneys collected and paid over by him, which is charged to the state and county proportionately to the amounts received by them respectively. The act consolidating the government of this city and county provides that "all taxes assessed upon real and personal property in this city and county shall be payable, and be paid, directly to the treasurer thereof," and in default of such payment the tax collector shall collect the same by seizure and sale of the property as provided by law; the taxes due, however, may be paid to the treasurer at any time before the prop-

erty is sold, and on the production, to the tax collector, of the proper receipt and payment of his legal fees, for services rendered, up to that time such property shall be discharged," *Statutes of* 1856, p. 167 § 77. And further, that the tax collector, upon final settlement, shall be charged with, and pay to the treasurer, all taxes collected by him, and not previously paid over, etc., § 78. The present law, fixing the fees of the tax collector, was in force and remaining unchanged by it or by the provisions of the amended revenue act of 1857; there are, then, no rates of compensation fixed by the act of 1857 different from, or changing those existing at the time it was passed.

The " consolidation act" does not, in express terms, say that *the party assessed* shall pay the tax directly to the treasurer, but that *all taxes* shall be paid directly to the treasurer. The treasurer is not named as the collector, but as the recipient, the depositary of the taxes. The act of 1857 does, in express terms, authorise the tax collector to collect all taxes, give receipts therefor, and also directs him to pay them over to the treasurer, who is the depositary under this act. If the tax moneys do not go through the tax collector's hands, he is not entitled to commissions, for he is only entitled to charge them on the moneys " collected and paid by him." The one act and the amendments thereto are *general* laws; revenue is the object and subject matter, and it authorises and provides the entire mode of assessing and the machinery for collecting it. The other act is intended to provide a government for the city and county of San Francisco. It partakes of the character of a special law, and is local in its operation. Revenue is not its subject matter, but an incident connected therewith, and dependent upon the general laws relating to that subject. The several statutes are not, then, strictly speaking, *pari materia.* So far as respects the taxes assessed and collected for the state, there can be no question but the tax collector, and not the treasurer, is the only person authorised to collect or receive the taxes from the persons assessed. There is more difficulty, however, in regard to the taxes levied for city and county purposes. It is intended by the § 77 of the " consolidation act" that the treasurer alone is authorised to receive the taxes prior to a default for their payment, then there is a conflict between this act and that of 1857, and the

exact meaning of §§ 44, 56 of the act of 1857 becomes important. But according to my views, if it is admitted there is an existing conflict, then this § 77 cannot be observed without violating the provisions and to some extent deranging the operation of the subsequent general law. It must in such case yield, and full force and effect must be given to the direct and positive provisions of the act of 1857, to wit: that the tax collector is authorised to collect all taxes and directed to pay them over to the treasurer. It results, then, that the *relator* is entitled to his commissions as fixed by the act of 1855, on all taxes assessed by the city and county of San Francisco for city and county purposes, which have been collected by the *relator* and paid over to the county treasurer, and that defendant should audit his bills accordingly. Peremptory *mandamus* to issue accordingly.